FILED
2020 Jul-07 AM 10:20
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| **STACY CARL MAYE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 7:19-CV-00134-CLM |
| ) | |
| **ANDREW SAUL,** ) | |
| **Commissioner of the Social** ) | |
| **Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## **MEMORANDUM OPINION**

Stacy Carl Maye ("Maye") seeks Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") from the Social Security Administration ("SSA") based on several impairments. According to his Complaint, Maye suffers from anxiety, post-traumatic stress disorder ("PTSD"), sleep apnea, insomnia, degenerative disc disease, degenerative joint disease of the shoulders and knees, arthritis, migraines, chronic pain, obesity, hypertension, and hearing loss.

Maye asks this court to find that the Administrative Law Judge ("ALJ") erred in finding that Maye was not disabled for two reasons: 1) that the ALJ failed to give "great weight" to Maye's Veterans Affairs ("VA") rating and 2) that the ALJ's finding on Maye's Residual Functional Capacity, or RFC, was not supported by substantial evidence. But as detailed below, the ALJ did not err in reaching either

of these conclusions, and the court therefore affirms the ALJ's findings.

## I. Statement of the Case

### A. Maye's Impairments, as told to the ALJ

Maye finished high school and enlisted in the United States Marine Corps. While a member of the Marine Corps, Maye received vocational training as a diesel mechanic. R. at 128. This was the only position that Maye held while in the military. R. at 128.

Maye receives all his medical treatment through the VA. R. at 127. He alleges that he cannot work because of his panic attacks. R. at 128. In particular, it is hard for him to be in public or around people, and he prefers being alone. R. at 128. Maye has a driver's license and drives 1-3 times per month. R. at 128. Maye alleges that he experiences road rage when he drives and therefore only drives in his neighborhood. R. at 129-30.

Maye also experiences migraines, which can occur two to three times a week. R. at 130. When he has a migraine, Maye tries to sleep it off in a dark room. R. at 130. Maye's back pain makes it difficult for him to bend over, lift heavy objects, or sit for long periods of time. R. at 130. If Maye stands for long periods of time, his knee problems will cause his legs to give out and he has fallen several times. R. at 130-131. Maye estimates he can probably stand for 10 minutes without a break and states that he has a cane provided by a doctor at the VA. R. at 131. Maye has pain

in both his shoulders and had surgery on his right shoulder that left it weak. R. at 131. Maye's feet also cause him pain when he gets out bed in the morning, it feels like he is standing on nails for the first five to ten minutes after he gets up. R. at 131-32. Maye experiences pain daily and would rate his pain an eight or nine out of a scale of zero to ten. R. at 133-34.

While Maye takes medication for depression and anxiety, he does not see a therapist. R. at 128. Maye also takes medication for migraines, back pain, muscle spasm, foot pain, knee pain, and high blood pressure. R. at 128. The side effects of his medication include upset stomach, sleepiness, and generally not feeling like himself. R. at 132. Maye wears a back brace to help with his back pain. R. at 130. Maye also uses a CPAP at night to help with his sleep apnea and only gets four to five hours of sleep a night. R. at 133.

Maye spends most of his day sitting down, watching tv and experiences feelings of restlessness and tiredness. R. at 132. He is usually only able to pay attention to the television for around five minutes at a time. R. at 133. Maye spends most of the day by himself and prefers to be alone. R. at 132. Maye struggles with completing tasks like chores around the house and it often takes encouragement from his wife to finish the chores. R. at 133. Maye cannot complete tasks like going to the grocery store and only leaves the house for a quick trip around the block or for his appointments at the VA. R. at 134.

## B. Determining Disability

The SSA has created the following five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| | The 5-Step Test | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied. If no, proceed to Step 2. |
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |
| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |
| | *Determine Residual Functional Capacity* | |
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b) (2019) (Step 1); 20 C.F.R. § 404.1520(c) (2019) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (2019) (Step 3); 20 C.F.R. § 404.1520(e-f) (2019) (Step 4); 20 C.F.R. § 404.1520(g) (2019) (Step 5).

As shown by the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's residual functional capacity,

or "RFC."  A claimant's RFC describes their ability to perform physical and mental work activities on a sustained basis.  The RFC affects Step 5, which is the most important step in this case, as Maye's challenges to the ALJ's decision relate to directly to Step 5 and Maye's RFC.

### C. Maye's Application and the ALJ's Decision

The SSA reviews applications for disability benefits at three stages: (1) Initial determination, including reconsideration, (2) review by an ALJ, and (3) review the SSA Appeals Council.  *See* 20 C.F.R. § 404.900(a)(1-4) (2019).

Maye applied for DIB and SSI benefits in August 2017, claiming he became unable to work on May 31, 2017 due to disability. R. at 317. Maye reported he was unable to work due to PTSD, back problems, shoulder/neck problems, knee problems, sleep apnea, and problems with his feet. R. at 336. The SSA first denied his claim in November 2017.  R. at 218.

Maye then requested a hearing with an ALJ, which he received June 2018. One month later, the ALJ issued an opinion denying Maye's application. R. at 105-118.  The ALJ noted in her opinion that Maye meets the requirements of the Social Security Act through a date last insured of December 31, 2021.  R. at 110.

The ALJ found at Step 1 that Maye did not engage in substantial gainful activity from his alleged onset date of May 31, 2017 through the date of the hearing. R. at 110.

The ALJ found at Step 2 that Maye suffered from severe impairments of degenerative disc disease, degenerative joint disease in his left shoulder, PTSD, and generalized anxiety disorder. R. at 110. The ALJ also found that, while Maye has medically determinable impairments of migraines, hypertension, sleep apnea, plantar fasciitis, and obesity, these conditions "do not cause more than minimal limitation in the claimant's ability to perform basic physical and mental work activities and therefore are nonsevere." R. at 110.

At Step 3, the ALJ reviewed the medical evidence and found that none of Maye's impairments, individually or combined, met or equaled the severity of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. at 111. As a result, the ALJ next had to determine Maye's RFC.

The ALJ next determined that Maye had the residual functional capacity to perform light work with multiple limitations. R. at 114.

The ALJ went to Step 4, where she found that Maye was unable to perform any of his past relevant work. R. at 117. But at Step 5, the ALJ found that, based on the testimony of the vocational expert, and "considering the claimant's age, education, work experience, and residual functional capacity" that Maye was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." R. at 118. These jobs included Mail Clerk, Fingerprint Clerk, and Garment Sorter. R. at 118. The ALJ thus found that Maye

was not disabled and not entitled to benefits. R. at 118.

Maye requested an Appeals Council review of the ALJ's decision. R. at 282. The SSA Appeals Council will review an ALJ's decision only for very particular reasons, and the Council found that Maye had not established one of the reasons. As a result, the ALJ's decision became the final decision of the SSA Commissioner, and thus the decision subject to review by this Court.

## II.  Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of the Court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and (b) whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).

In reviewing any of the ALJ's factual findings, 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). So even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529

(11th Cir. 1990)).

That said, no decision is automatic, for "despite th[e] deferential standard, it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)).

### III.  Legal Analysis

Maye raises two arguments why the ALJ erred in deciding that Maye was not disabled.  First, he argues the ALJ erred by not assigning great weight to a VA disability rating.  Second, he argues that substantial evidence does not support the ALJ's conclusions on Maye's RFC.  This court finds that neither of these arguments is availing, for the reasons discussed below.

### I.  The ALJ did not err when she failed to assign "great weight" to the VA disability rating.

An ALJ's evaluation of another agency's disability determination involves the application of legal standards, so the court reviews such evaluations de novo.  *See Brown-Gaudet-Evans v. Comm'r of Soc. Sec.*, 673 F. App'x 902, 904 (11th Cir. 2016) ("Because [the weight accorded to another agency's disability determination] is about the legal principles upon which the ALJ based his decision, we review it de

novo.") (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)).

Maye argues that, under Eleventh Circuit precedent, the ALJ erred by not giving "great weight" to the VA's 100% Disability Rating in finding Maye's impairments were not severe. Doc. 11 at 2-4. Maye argues that because the ALJ failed to discuss the VA rating or to scrutinize it, this court should find that the ALJ committed an error of law. The Commissioner responds that the SSA's recent adoption of 20 C.F.R. § 404.1504 renders prior precedent requiring the ALJ to give "great weight" to a VA's determination no longer binding. Doc. 12 at 6-12.

Under the previous case law, an ALJ was required to give "great weight" to a VA rating. *Brown-Gaudet-Evans*, 673 F. App'x at 904; *see also Brady v. Heckler*, 724 F.2d 914 (11th Cir. 1984). While an ALJ was "not required to give the VA's disability determination controlling weight" she had to "seriously consider and closely scrutinize the VA's disability determination and [] give specific reasons if [she] discounts that determination." *Brown-Gaudet-Evans*, 673 F. App'x at 903.

The new regulations, which apply to claims filed on or after March 27, 2017, state that the Commissioner "will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you [claimant] are disabled, blind, employable, or entitled to any benefits." 20 C.F.R. § 404.1504. The ALJ must, however, "consider all of the supporting evidence underlying the other governmental

agency or nongovernmental entity's decision" that is received as part of the social security disability claim. *Id.* Thus, the new regulations remove the requirement that an ALJ articulate her reasons for declining to give weight to VA disability ratings.

Maye's application was filed on August 25, 2017 — i.e., after March 27, 2017 — therefore, the new regulations apply to this matter. Following 20 C.F.R. § 404.1504, the ALJ considered the evidence supporting Maye's VA disability rating. The ALJ noted that she considered the entire record, which includes Maye's VA records, and specifically discussed the VA records in her decision. R. at 111-116. She also noted that the VA record showed Maye reported daily alcohol use, that he declined a mental health referral, and had discontinued mental health treatment. R. at 115, 381, 387, 394. Because the ALJ considered the evidence supporting Maye's VA disability rating, the ALJ did not have to review the VA disability rating itself, much less provide an affirmative statement that she gave the rating great weight. The court thus finds the ALJ did not err in failing to fully credit the VA's disability rating.

## II.   Substantial evidence supported the ALJ's conclusions on Maye's RFC.

Maye also argues that the ALJ erred in her findings on Maye's physical and mental RFC, based on an improper evaluation of medical opinion evidence and a failure to consider all of Maye's impairments. Maye argues that his abilities are far more limited than the RFC suggests (doc. 11 at 8). Maye presents three primary

reasons to support his argument that the RFC was not supported by substantial evidence: (1) the ALJ improperly rejected Dr. Tocci's opinion; (2) the ALJ failed to provide limitations associated with Maye's use of a cane; and (3) the ALJ failed to include the effect of Maye's torn ACL in her assessment.  As for Maye's mental RFC, Maye states that "[t]he ALJ's evaluation of Mr. Maye's ability to maintain concentration, persistence and pace is flawed."  Doc. 11 at 7.  In other words, Maye asks this court to find that the ALJ erred in her factual findings and that substantial evidence does not support her conclusions about Maye's mental and physical RFC.

    1.    <u>The Weight Assigned to Medical Opinions</u>.  Maye argues that the ALJ erred when she gave partial weight to the consultative exam performed by Dr. Nina. Tocci. Doc. 11 at 8.  As the ALJ articulated good cause for failing to give Dr. Tocci's opinion controlling weight—including that the opinion was a one-time exam and not consistent with the medical record as a whole—there was no error.  *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (a treating physician's testimony must be given substantial weight, unless good cause is shown to the contrary); *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (when an ALJ clearly articulates specific reasons for not giving a treating physician's opinion controlling weight, there is no reversible error).

    2.    <u>Maye's Use of a Cane</u>.  Maye argues that the ALJ erred in her assessment of Maye's physical RFC by not including limitations related to his use

of a cane. Maye contends that "there were no limitations account for the required use of a cane while standing and walking." Doc. 11 at 11.

The only evidence in the record on Maye's use of a cane is a note from the VA stating that Maye was provided a cane, but it was not a prescription and that specific circumstances where the cane should be used were not included in the note. *See* R. at 116, 568. In her RFC, the ALJ included the following limitation, "He will never kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes and/or scaffolds." This limitation indicates that the ALJ may have considered Maye's use of a cane. In any event, while some evidence shows that Maye used a cane at points during the relevant period, when taken in context of the medical record as whole, this evidence is insufficient to establish disability. Substantial evidence supported the ALJ's RFC assessment, as the medical evidence was largely consistent with the assessment. 20 C.F.R. §§ 404.1545(e), 416.945(e) (providing the ALJ must consider all of a claimant's alleged impairments in determining the claimant's RFC).

3. Maye's Torn ACL. Maye finally argues that the ALJ erred because "[t]here was no discussion of Mr. Maye's bilateral knee pain with chronic ACL tear and chondromalacia in his left knee and how it affected her consideration of the Listings and the RFC." Doc. 11 at 11. But Maye bears the burden of showing he was disabled at the administrative stage and bears the burden here of showing the ALJ's determination is unsupported by substantial evidence. Maye has not done so.

It appears to this court that the ALJ's decision on Maye's RFC was supported by substantial evidence. The same limitations mentioned earlier about Maye's cane—that Maye "will never kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes and/or scaffolds"—also related to his impairments regarding his knee. The court finds that a reasonable person viewing the same evidence cited by the ALJ could have reached the same conclusion as the ALJ. *See Borges v. Commissioner*, 771 Fed. Appx. 878, 882 (11th Cir. April 26, 2019) (finding that an RFC determination of "light work" with limitations on carrying, sitting, lifting, standing, walking, pulling and pushing for claimant was supported by substantial evidence). The court is precluded from taking the next step of re-weighing the evidence to determine whether it would have reached the same conclusion as the Commissioner/ALJ. *See id.*

After reviewing the entire record, the court finds that the ALJ's RFC assessment was based on substantial evidence on record. Maye has not pointed the court to objective medical findings that would compel imposing a more restrictive RFC assessment in this case.

## IV. Conclusion

The court has reviewed the parties' briefs, the ALJ's findings, and the record evidence and finds that the ALJ's decision was supported by substantial evidence. The decision of the SSA Commissioner is due to be **AFFIRMED**. A separate order

will be entered.

**DONE** on June 22, 2020.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE